Manuel A. SALINAS, Plaintiff,

v.

**G. W. MURPHY INDUSTRIES, INC.,**
**Defendant.**

Civ. A. No. 71–H–198.

United States District Court,
S. D. Texas,
Houston Division.

March 6, 1972.

---

Jeffrey J. Skarda, Houston, Tex., for plaintiff.

Vinson, Elkins, Searls & Smith, Charles L. Berry, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER:

SEALS, District Judge.

Plaintiff brings this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., to compel his instatement in a certain job classification to which he was denied promotion. Plaintiff asserts that the award of his position to an Anglo-American constitutes, in the light of plaintiff's seniority and superior qualifications, an intentional discrimination on the basis of race and national origin, in violation of the Act. Defendant contends that plaintiff is precluded from maintaining this suit by virtue of plaintiff's prior submission of his complaint to arbitration, and the arbitrator's subsequent finding that plaintiff did not possess the necessary qualifications for the position he sought. The case is presently before the Court on defendant's motion for summary judgment.

As developed by the arbitrator in his award of November 16, 1970, the facts appear as follows:

(1) On April 1, 1970, defendant company posted for bids Job No. 311, Leadman-Crushing and Screening. Twenty employees, including plaintiff Salinas, bid on this position.

(2) Defendant considered all bidders unqualified to perform this job and so, thereafter, transferred another employee, an Anglo-American junior to plaintiff in seniority, to the position.

(3) On April 15, 1970, plaintiff filed a grievance, alleging that he should have been awarded the job. Defendant denied relief and the case was submitted to arbitration.

(4) On November 16, 1970, the arbitrator issued a written opinion in which he found that plaintiff did not possess the necessary qualifications for the leadman position and that, consequently, plaintiff's rights under the contract had not been violated.

On June 6, 1970, plaintiff filed with the Equal Employment Opportunity Commission a complaint of employment discrimination, and on February 19, 1971, he initiated the present action in this court.

The issue in this case—whether an employee's assertion of his rights under

Title VII is barred by the decision in a prior arbitration proceeding involving the employee's assertion of his contract rights—has produced a split of authority in the appellate courts. In Dewey v. Reynolds Metals Co., 429 F.2d 324 (C.A. 6, 1970), aff'd by an equally divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L. Ed.2d 267 (1971), the Court of Appeals for the Sixth Circuit held that the arbitrator's decision precluded a subsequent action for discrimination. Such a result, the Court reasoned, was dictated by the need to preserve the viability of the arbitration process.

> "Any other construction would bring about the result present in the instant case, namely, that the employer, but not the employee, is bound by the arbitration.

> "This result could sound the death knell to arbitration of labor disputes, which has been so usefully employed in their settlement. Employers would not be inclined to arbitration clauses in collective bargaining agreements if they provide only a one-way street, i. e., that the awards are binding on them but not on their employees." Dewey, at 332.

There can be no doubt that arbitration is a tool highly favored by Congress, and that courts should be wary of attempts to restrict its application. But, as the Harvard Law Review has recently noted, there is also a national policy against employment discrimination, and the effectiveness of that policy might be greatly imperiled by the widespread adoption of the Sixth Circuit's strict view. Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964," 84 Harv.L.Rev. 1109, 1226–27 (1971).

Other considerations should also limit judicial deference to any blanket rubber-stamping of the arbitrator's award. In most instances, including that of the case at bar, the award does not allude to the charge of discrimination, but is limited to a determination of whether the complainant was qualified to fill the position sought. When the arbitrator considers alleged discrimination at all, he is likely to view it in general terms rather than in the specific language of the statute.

Still another reason for avoiding automatic ratification of the arbitrator's ruling is the possibility that the arbitration procedure may not conform to the due process standards required in a judicial proceeding. In addition, the complainant's union may have conflicting interests which prevents its fully effective representation of the complainant at the arbitration hearing. "Developments in the Law," supra, at 1225–26.

The Court of Appeals for the Fifth Circuit addressed itself to the problem in Hutchings v. United States Industries, Inc., 428 F.2d 303 (C.A. 5, 1970). Contrary to the position expounded by the Sixth Circuit, the Fifth Circuit asserted that Congress

> " * * * has made the federal judiciary, not the EEOC or the private arbitrator, the *final* arbiter of an individual's Title VII grievance." *Hutchings*, at 313–314.

A primary reason for the trial judge's "special responsibility" in Title VII cases is the "public character" of this particular kind of litigation, since, frequently,

> " * * * remedies are devised to vindicate the policies of the Act, not merely to afford private relief to the employee." *Id.*, at 311.

By placing much emphasis on the scrutiny with which the courts should evaluate an arbitrator's findings, the Court does not wish to imply that

> " * * * employer obligations having their origin in Title VII are not to be incorporated into the arbitral process." Id., at 313.

Neither does this judicial responsibility mean that the courts should totally disregard the arbitrator's determination:

> "The courts should evaluate both awards and grievance determinations or settlements in deciding Title VII issues of violations and relief. That

· is, the awards and determinations may properly be considered as evidence. Id., at 314, fn. 10.

Although *Hutchings* does not specify the details of the procedure for evaluating the effects of the arbitrator's award, the opinion clearly administers the coup de grace in this Circuit to the doctrines of election of remedies and res judicata as applied to Title VII cases previously submitted to arbitration. Plaintiff cannot be held to have forfeited his right to a determination by this court on his charge of discrimination in promotion. Accordingly, defendant's motion for summary judgment is denied.